# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL T. ROSA, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 12 C 9648 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has sued the City of Chicago for its alleged violations of the Americans with Disabilities Act. The case is before the Court on the City's motion pursuant to Federal Rule of Civil Procedure ("Rule") 56 for summary judgment. For the reasons set forth below, the Court grants in part, denies in part and strikes as moot in part the motion.

## Facts

Plaintiff worked as a hoisting engineer in defendant's Department of Streets and Sanitation from July 1989 to 1997, and in 1997 he transferred to what is now called the Department of Water Management ("DWM"). (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 1.) Hoisting engineers operate heavy construction equipment to excavate and lift earth and water and sewer pipes. (*Id.* ¶ 14.) Among the machines they use are orange peels, vactors, front end loaders/high lifts, back hoes, compressor/welder trucks and advance complaint trucks. (*Id.* ¶ 18.) An orange peel is used to clean catch basins, and has "a crane-like mechanism on the back [with] a clamshell on the end that opens and closes and picks up debris." (*Id.* ¶ 20) (quotation omitted). A vactor is "a truck device with separate motors on the back and a giant [suction] tube that . . . suck[s] out the rodding of the main sewer." (*Id.* ¶ 23.) A front end loader or high lift is a "machine [with a high] cab [and] a giant

bucket in the front." (*Id.* ¶ 26.) A backhoe is a smaller version of a front end loader. (*Id.* ¶ 28.) A compressor/welder truck is a truck with a flat bed to which an air compressor or welder is attached. (*Id.* ¶ 30.) An advance complaint truck is like an orange peel "except [that] it has a pressurized hose for water . . . to clean out private drains." (*Id.* ¶ 32.) (quotation omitted).

DWM has a new construction section, which installs new sewer and water pipes throughout the city, and a cleaning program, which cleans and repairs existing pipes. (*Id.* ¶¶ 8-9.) From 1997 to September 2004, plaintiff worked in the cleaning program assigned to the North District Yard, where Mark LeBaron and James McKenna were his foremen. (*Id.* ¶ 10.)

In January 2004, plaintiff had surgery on his left knee. (*Id.* ¶ 35.) Though defendant's doctor said plaintiff could return to work without restrictions in April 2004, plaintiff says he had difficulty climbing onto the orange peel and vactor. (*Id.* ¶ 46.) On May 6, 2004, plaintiff gave LeBaron and McKenna, and later their boss, Mike Breslin, a note from his own doctor that said: "[Plaintiff] is able to return to work full duty. Attempt to limit climbing, kneeling, squatting, prolonged walking, and sitting in tight compartments." (*Id.* ¶¶ 48-49.)

In September 2004, plaintiff requested and received a transfer to the new construction section, which did not use orange peels or vactors. (*Id.* ¶ 50.) Plaintiff worked in new construction from September 2004 to April 2005, and was assigned to a backhoe every day. (Def.'s Exs. Supp. Mot. Summ. J., Ex. 1, Rosa Dep. at 127-28.)

In April 2005, plaintiff requested and received a transfer back to the North District Yard, where he operated a backhoe for the rest of the year. (*Id.* at 133; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 51.)

On February 3, 2006, plaintiff saw his doctor, whose notes state that plaintiff had been wearing a left knee brace since the 2004 surgery, and thus put all of his body weight on his right knee

when he climbed onto the vactor, which caused tendonitis and pain in his right knee. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 2; *id.*, Ex. C, Abdulmassih Dep. Ex. 4, Medical Records at C001147.)

On February 22, 27, and 28, 2006, and March 2, 2006, LeBaron told plaintiff to go home when plaintiff said he could not climb onto the vactor or orange peel. (Def.'s Exs. Supp. Mot. Summ. J., Ex. 1, Rosa Dep. at 293-97.)

Plaintiff saw his doctor on March 16, 2006, whose notes say: "The patient was given a note not to be on an a Vactor machine. His boss put him back on the Vactor machine. The patient re-injured his right knee." (Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. C, Abdulmassih Dep. Ex. 4, Medical Records at C001140.)

By April 2006, plaintiff says he was having serious problems operating vactors and orange peels because of the height or positioning of their steps and the size of their cabs. (Def.'s Exs. Supp. Mot. Summ. J., Ex. 1, Rosa Dep. at 144-45.)

On April 28, 2006, plaintiff filed a charge with the EEOC, which states:

In January, 2004, I underwent surgery for [an on the job] injury and I returned to work in April 2004 with restrictions. During various periods of time since returning to work in April, 2004, the General Superintendent of my district has forced me to perform work outside of my restrictions. During these periods of time and on multiple occasions, I have requested reasonable accommodations, which have been denied. In January, 2006, I suffered another on the job injury. In February 2006, I complained to the Administrative Assistant of the Commissioner who talked to the General Superintendent. In or around March, 2006, the Administrative Assistant of the commissioner spoke to the General Superintendent about my complaints, however, I am still assigned to perform work outside of my restrictions.

(Am. Compl., Ex. A, EEOC Charge.)

It is not clear what happened over the next several months. By December 2006, however, plaintiff says he could no longer use a vactor, orange peel or front end loader/high lift. (Def.'s Exs.

Supp. Mot. Summ. J., Ex. 1, Rosa Dep. at 149-50.) He also says that LeBaron accommodated him in early December by assigning him to a backhoe. (*Id.*)

On December 11, 2006, plaintiff was examined by defendant's doctor, who said that plaintiff "must avoid climbing onto vactor." (Def.'s Exs. Supp. Mot. Summ. J., Ex. 1, Rosa Grp. Dep. 16, 12/11/06 Discharge Sheet.)

On December 26, 2006, plaintiff saw his own doctor, who wrote the following:

> This letter is to certify that Mr. Rosa is under my care. He suffers with left knee arthrosopy [sic]. Due to his conditions, he can return to work with restrictions. He may work full time: however he may not climb, kneel[,] squat or do prolonged walking or sitting for a long period of time. He can no longer use the vactor and orange peel.

(Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. C, Abdulmassih Dep. Ex. 5, 12/26/06 Letter.)

On January 3, 2007, LeBaron assigned plaintiff to an orange peel. (Def.'s Exs. Supp. Mot. Summ. J., Ex. 1, Rosa Dep. at 178-79.) When plaintiff said he could not use that machine, LeBaron sent him to DWM's main office, where plaintiff was told he would no longer be accommodated and would not receive disability payments. (*Id.*)

Plaintiff did not return to work after January 3, 2007, but he did receive disability payments equal to 75% of his salary, tax-free, starting April 18, 2007 (retroactive to January 3) until October 7, 2011, when he was accused of falsifying documents. (*Id.* at 185-188, 303.) Plaintiff denies that charge, which is the subject of a pending workers' compensation proceeding. (*Id.* at 315-19.)

## Discussion

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters

4

asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

**Limitations & Scope of the Charge**

Plaintiff can sue under the ADA, only if his claims were first raised in an EEOC charge that was filed within 300 days of the allegedly unlawful acts. *See* 42 U.S.C. § 2000e-5(e)(1) (setting 300-day limitations period for Title VII claims); 42 U.S.C. § 12117(a) (adopting Title VII limitations period for ADA claims). Plaintiff filed his EEOC charge on April 28, 2006. (*See* Am. Compl., Ex. A, EEOC Charge.) Thus, any claims based on events that occurred before July 2, 2005 are time-barred.

Defendant argues that plaintiff is also barred from recovering for any alleged failure to accommodate that occurred after he filed his EEOC charge and any harassment claim because he did not raise these claims in his EEOC charge. (*See id.*) However, even a claim not explicitly raised in a charge may still be within its scope if the claim is "like or reasonably related to" those in the charge and "reasonably could have developed from the EEOC's investigation." *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996) (quotations omitted). Claims are alike or reasonably related if there is "a factual relationship between them," *i.e.*, they "describe the same conduct and implicate the same individuals." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (emphasis omitted).

Plaintiff's post-April 28, 2006 failure-to-accommodate claims meet this standard. The post-April 28, 2006 claims are based on the same conduct – failure to accommodate – and involve the same individuals – LeBaron, McKenna, and Breslin – as accommodation claims set forth in the

5

charge. Given these similarities, the EEOC's investigation into plaintiff's charge would likely have uncovered the later accommodation claims. Accordingly, the post-April 28, 2006 accommodation claims fall within the scope of plaintiff's EEOC charge.

The situation is different, however, for the harassment claim. LeBaron is the only person allegedly involved in both the failure to accommodate and the harassment. (*See* Def.'s Exs. Supp. Mot. Summ. J., Ex. 1, Rosa Dep. at 111-13, 134-35, 203-13, 222-25, 232-39.) Moreover, Le Baron's alleged behavior, name-calling, swearing and falsely telling plaintiff a medical appointment had been canceled, would not likely have been uncovered by the EEOC's investigation of plaintiff's accommodation claim. Thus, the harassment claim is outside the scope of the EEOC charge. *See Ross v. Ed Napleton Honda, Inc.*, No. 04 C 4935, 2005 WL 38742, at *4 (N.D. Ill. Jan. 7, 2005) (holding that harassment claim was outside the scope of a failure-to-accommodate EEOC Charge); *cf. Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999) ("[A] failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA.").

**<u>Failure to Accommodate</u>**

To defeat summary judgment on his accommodation claim, plaintiff must offer evidence that: (1) he is "a qualified individual with a disability"; (2) defendant "was aware of [his] disability"; and (3) defendant "failed to reasonably accommodate the disability." *Brumfield v. City of Chi.*, 735 F.3d 619, 631 (7th Cir. 2013). Defendant argues that evidence of the first element is lacking.

A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that [he] holds." 42 U.S.C. § 12111(8). A "disability" is, among other things, "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A). "Major life activities"

include caring for oneself, working, breathing, walking, standing, sitting, and bending. 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(i). "An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(ii).

Defendant contends that plaintiff was not a "qualified individual" because he could not perform the essential functions of the hoisting engineer position. There is no dispute that the "essential duties" of a hoisting engineer include "driv[ing] heavy equipment to and from job sites based on daily work assignments," and "operat[ing] excavation and loading equipment such as backhoes, front end loaders, hi-lifts, air compressors, and pumps for digging trenches, backfilling, loading, lifting and setting pipe." (Exs. Supp. Def.'s Mot. Summ. J., Ex. 1, Rosa Grp. Dep. Ex. 2, Job Description at C001207; *id.*, Rosa Dep. at 35-36.) It is also undisputed that the ability "to access the cabs of heavy construction equipment," is a physical requirement of the job. (Exs. Supp. Def.'s Mot. Summ. J., Ex. 1, Rosa Grp. Dep. Ex. 2, Job Description at C001208; *id.*, Rosa Dep. at 35-36.) Moreover, plaintiff testified that by April 2005, the only machines he could operate were a backhoe and a compressor. (Exs. Supp. Def.'s Mot. Summ. J., Ex. 1, Rosa Dep. 131-33.) However, viewed favorably to plaintiff, the record suggests that: (1) only a few of the twenty-five hoisting engineers in the North District Yard worked on every machine; (3) some of the hoisting engineers worked exclusively on one machine; and (3) from April through December 2005, plaintiff was assigned exclusively to a backhoe. (*Id.* at 131-33, 370-73.) This evidence creates a genuine issue of fact as to whether the ability to operate all of the machines is an essential function of the hoisting engineer job.

Alternatively, defendant argues that plaintiff does not have a disability because four of the activities impacted by his knee injuries, *i.e.*, running, kneeling, squatting, and climbing, are not

7

"major life activities." It is true that these activities are not identified as "major life activities" by the ADA or its regulations, and that some courts have held that they are not. *See* 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(i); *Gretillat v. Care Initiatives*, 481 F.3d 649, 654 (8th Cir. 2007) ("[The] ability to crawl, kneel, crouch, and squat . . . cannot meet the demanding standard required by [*Toyota Motor Manufacturing Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002)] for us to consider them major life activities."). However, the *Gretillat* court was interpreting the pre-2009 version of the statute, not the amended version that applies here, and relied on the holding of *Toyota*, which the 2009 ADA amendments were meant to overrule. *See Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004) ("It is well-established that a court generally applies the law in effect at the time of its decision . . . ."); *see also* 29 C.F.R. § 1630 App. (stating that an "express purpose[]" of the 2009 amendments was "[t]o reject the standards enunciated by the Supreme Court in *Toyota* that . . . to be substantially limited in performing a major life activity under the ADA an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives") (quotation omitted). Neither the Supreme Court nor the Seventh Circuit has determined how running, climbing, kneeling, and squatting should be viewed under the current version of the ADA. Thus, their status is unclear.

We need not decide the issue with respect to running and squatting, however, because there is no evidence that plaintiff was required to do these activities at work. Moreover, though plaintiff said he was sometimes required to kneel when he operated an orange peel or a vactor, he also said he had done no kneeling during orange peel operation from April 2004 to January 2007, and the "several" times kneeling was required during vactor operation in that period, he was able to do it. (*See* Def.'s Exs. Supp. Summ. J., Ex. 1, Rosa Dep. at 89-91, 99-100.) In short, the record does not suggest that plaintiff was required to but could not run, kneel and squat to perform his job. Thus,

defendant is entitled to judgment as a matter of law on any failure-to-accommodate claim based on these alleged limitations. *See Brumfield*, 735 F.3d at 633 ("[T]he ADA does not require an employer to accommodate disabilities that have no bearing on an employee's ability to perform the essential functions of [his] job.").

That leaves climbing, which the parties agree was a requirement of plaintiff's job. (*See id.* at 35-36, 56, 80-88, 96-98, 107-08, 143-45, 158-70; *id.*, Rosa Grp. Dep. Ex. 2, Job Description at C001207-08; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 20, 24-26, 31-32.) Because the only guidance on this issue is Congress' direction that the phrase "major life activity" be interpreted broadly, the Court holds that climbing falls into that category.

Even if climbing, like walking, standing, and sitting, is a major life activity, defendant argues that plaintiff is not disabled because his impairments do not substantially limit his ability to engage in these activities. The Court disagrees. Viewed favorably to plaintiff, the record suggests that: (1) he has knee pain if he stands in place for more than twenty or twenty-five minutes; (2) he must stretch out his legs and physically lift his knees if he sits for more than five minutes; (3) he does not do household chores like cleaning gutters, washing windows or changing light bulbs that would require climbing a ladder or stepping up onto a chair; (4) in 2006, his treating physician believed that plaintiff could not climb more than "[a] few steps," could not walk a city block, and could not sit for more than fifteen to twenty minutes; and (5) the City deemed him disabled as of January 3, 2007. (*See* Def.'s Exs. Supp. Mot. Summ. J., Ex. 1, Rosa Dep. at 56, 60-63, 185-88; Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. C, Abdulmassih Dep. at 23-25 & Abdulmassih Dep. Ex. 5, 12/26/ Letter; *id.*, Ex. H, Anna Rosa Dep. at 27.) Thus, there is a genuine issue for trial as to whether plaintiff is a qualified individual with a disability.

9

There is also a genuine issue for trial as to the remaining elements of the accommodation claims, *i.e.*, whether defendant was aware of and failed reasonably to accommodate plaintiff's disability. As discussed above, viewed in plaintiff's favor, the record suggests that defendant received medical documentation of plaintiff's disability and could have assigned him exclusively to a machine that he was able to operate. Accordingly, defendant's motion for summary judgment on plaintiff's accommodation claims is denied.

**Conclusion**

For the reasons set forth above, the Court grants in part, denies in part and strikes as moot in part defendant's motion for summary judgment [121]. The motion is granted with respect to: (1) the harassment claim in Count II of the amended complaint; and (2) any failure-to-accommodate claim in Count I based on events that occurred before July 2, 2005. The motion is denied with respect to any failure to accommodate claim based on events that occurred between July 2, 2005 and the date that plaintiff became totally disabled. The motion is stricken as moot as to the claims in Counts III and IV of the amended complaint, which plaintiff has dismissed. (*See* Pl.'s Resp. Opp'n Mot Summ. J. at 14.) The Court also strikes as moot defendant's motion to bar plaintiff's expert testimony [124], as the Court did not rely on the testimony in deciding this motion. At the next status hearing, the Court will set dates for filing the final pretrial order and for trial.

**SO ORDERED.**  ENTERED: May 1, 2014

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**